Federal Defenders
OF NEW YORK, INC.

Southern District
81 Main Street, Suite 124
White Plains, NY 10601
Tel: (914) 428-7124 Fax: (914) 948-5109

Tamara L. Giwa
*Executive Director*

Jennifer L. Brown
*Attorney-in-Charge*

April 16, 2026

The Honorable Cathy Seibel
United States District Court Judge
Southern District of New York
300 Quarropas St.
White Plains, NY 10601-4150

Re: *United States v. Carsen Mansfield,* 26-cr-16 (CS)

Dear Honorable Judge Seibel:

I respectfully submit this sentencing letter in support of a sentence of 60 months imprisonment with a term of supervised released, as recommended by United States Probation, for Mr. Mansfield's sentencing scheduled before this Court on April 30, 2026, at 2:15 P.M.

**I. <u>History and Characteristics of Mr. Mansfield</u>**

Carsen Mansfield is 24 years old and is the eldest of two children born to Mark Mansfield and Christine Schnauffer-Mansfield. Pre-Sentence Report ("PSR") ¶¶ 53, 54. He was raised in North Caldwell, New Jersey. *Id.* ¶ 55. Although from the outside his family seemed like a prototypical happy family his childhood, in reality, was more complicated than that. *Id.* His parents were often distant when he was young. *Id.* They both worked and their jobs required constant travel so he would only see each one of them for a few days at a time and not often see them together. *Id.* As a result, he was primarily raised by his maternal grandparents. *Id.* His grandparents faced financial problems and eventually filed for bankruptcy. *Id.* His mother ended up buying her parents' home, which added further strain on his family's finances. *Id.* When his parents were together, they frequently fought due, in part, to financial stress and caring for Mr. Mansfield's grandparents. *Id.* Although there was no physical violence, there were often screaming matches with objects being thrown. *Id.*

His parents separated for several years when he was around nine years old. *Id.* Shortly thereafter, while in the fourth grade, he was diagnosed with Attention-Deficit/Hyperactivity Disorder ("ADHD"). *Id.* ¶ 69. He began seeing a school therapist and was prescribed medications. *Id.* Ultimately, his family moved him out of the private Catholic school he was

familiar with and into the public school system in order to receive an Individualized Education Program ("IEP"). *Id.* ¶¶ 63, 69; Letter from Mark & Christine Mansfield, dated March 9, 2026, attached hereto as Exhibit A.

Around this time, he also had his first exposure to sexual behavior. PSR ¶ 76. This resulted in him seeking out pornography through online devices. *Id.* He found that these materials eventually provided a "release from the bullying" and he began viewing these materials nearly every day. *Id.* As he describes, "[i]t started off innocently as a curiosity and over time became a way for me to process my emotions." Letter from Carsen Mansfield, attached hereto as Exhibit B. Eventually, it became his outlet for his feelings. *Id.*

As soon as he moved to public school, he also faced pervasive bullying. PSR ¶¶ 56, 63. He believes he was bullied as the new kid in school and because of his parents' separation, which escalated when his peers learned he had attempted modelling and acting. *Id.* ¶ 56; Mitigation Report from Onaiza Skeikh, M.S., dated April 16, 2026, attached hereto as Exhibit C at 4. The bullying included verbal, physical, and online harassment and it went beyond mere teasing. *Id.*; Exhibit A; Exhibit C at 4. As he reports, he had urine-soaked rags and feces wrapped in paper thrown at him, he had items stolen from him, and he had naked photos of himself circulated at his school when others found them. Exhibit C at 4, 6.

He had his first suicide attempt shortly thereafter when he attempted to suffocate himself with clay. PSR ¶ 74. He continued in therapy and was prescribed an antidepressant. *Id.* ¶ 69. The bullying continued until his junior year of high school. *Id.* ¶ 56. He attempted suicide for a second time when he tried to overdose with pills. *Id.* ¶ 74. Eventually, when he found success on with baseball, the bullying dissipated. *Id.* ¶ 56. The following year, the COVID-19 pandemic caused him to complete his senior year remotely, which was a difficult experience particularly given his proclivity for using the internet. *Id.*; *see* Letter from Danielle Novak, dated February 26, 2026, attached hereto as Exhibit D.

He graduated from high school in 2020 and began studying at Dominican University in Orangeburg, New York. PSR ¶¶ 60, 92. In college, he stopped taking medication as his mood improved. *Id.* ¶ 70. He became a volunteer firefighter in North Caldwell, New Jersey; Newburgh, New York; and Orangeburg, New York. *Id.* ¶ 93. He also became a volunteer EMT in Nanuet, New York, and completed EMT schooling with Rockland County Fire Center. *Id.*

He graduated from Dominican University with his bachelor's degree in criminal justice in 2024. *Id.* ¶ 92. He then enrolled in their master's program for a degree in organizational leadership and communication. *Id.* While completing his master's degree, he worked for the school as a student success coach and graduate assistant. *Id.* ¶ 97. He also worked as an EMT with Ambulnz, a private company, in Queens, New York. *Id.* ¶ 96. He was halfway through completing his master's degree when he was arrested for the instant offense. *Id.* ¶ 92. By this point, his parents had relocated to North Carolina and Mr. Mansfield was residing with his grandparents and taking care of them. *Id.* ¶¶ 55, 61; Letter from Frankie Mansfield, dated March 6, 2026, attached hereto as Exhibit E.

## II. <u>Nature and Circumstances of the Offense</u>

On August 1, 2024, Mr. Mansfield had a conversation with another individual over X wherein he sent 9 videos and 5 images of sexually explicit imagery. PSR ¶¶14, 15. One of the videos was of a minor engaged in sexually explicit conduct. *Id.* ¶ 15. The video was one he had received when he was also a minor and had dated the then 14-year-old victim. *Id.*

On August 4, 2024, Mr. Mansfield, using a display name of "nonme45.#0" added a minor, who was 17 years old, on Discord and sent her a series of nude photographs of her that she had taken when she was 14 years old. *Id.* ¶¶ 11, 12. He then ordered her to send additional sexually explicit photographs and threatened to distribute the nude photographs he had sent her if she did not comply. *Id.* ¶ 13.

## III. <u>A Sentence of 60 Months Would be Sufficient But Not Greater Than Necessary</u>

The overriding sentencing principle, set forth in 18 U.S.C. § 3553(a), is to "impose a sentence that is sufficient, but not greater than necessary" to comply with the purposes of sentencing, which are retribution, deterrence, public protection, and rehabilitation. In considering these principles, it is respectfully submitted that a sentence of 60 months would speak to these sentencing principles. It is consistent with the recommendation of United States Probation in the PSR and sentences for first time offenders in this guideline range. *Id.* pp. 27, 30. Based on that and the enclosed, it is respectfully submitted that such a sentence would be a sufficient, but not greater than necessary sentence.

### A. Childhood Bullying and Mental Health Issues

Mr. Mansfield was fortunate to grow up with two parents who clearly loved him. However, their busy work schedules meant that Mr. Mansfield was often without one or both of

his parents for periods of time. While his grandparents were often available to care for him and his sister, it was a source of tension in his parents' marriage which resulted in loud screaming matches where objects were thrown. These events had a significant impact on him. As his parents note, "Carsen experienced instability at home during formative years that deeply affected him." Exhibit A.

However, several events converged when he was around nine years old that had a profound impact on him and the shift in his personality was evident. Exhibit E. First, his parents separated. Then he was diagnosed with ADHD and put on medication. As a result of the diagnosis, he was required to switch schools in order to receive the services he needed. This resulted in him being bullied by his classmates. Around the time that this was happening, he had his first sexual experience, which drove him to learn more about that experience.

Like many kids his age, he had grown up with the internet, and it was ubiquitous. As his Aunt Danielle Novak keenly observed, "[h]is generation of children [grew] up with too much of the internet in their daily lives, it is pervasive and far too much access to what can be a dark place." Exhibit D. From an early age, he was exposed to devices that had internet capabilities and he began to explore this new sexual experience through the internet. Exhibit A. It appears that he had unfettered access to the internet through these devices. *Id.* As his parents regretfully acknowledge, "we recognize that we could have done more, in particular, we regret not being more aware of his internet activity at an early age." *Id.* This allowed him to disengage from the stress and anxiety he was feeling and find something that provided him with a form of relief. Exhibit B. This became a tool for him to manage his stress during these times where he struggled to understand what was happening in his life. However, as he began consuming more online content, he became quieter and kept to himself. Exhibit E. However, viewing pornography online was a double-edged sword. "[T]he internet became both a continuation of harm and a space where his coping patterns began to develop more maladaptively." Exhibit C at 6. As he explored pornography and internet chat rooms, he too was taken advantage of and sent nude photos to others. At times, those photos were further sources of his bullying.

Throughout all of this, he tried to brave his way through. His parents' reconciliation helped, but the time window of when these stresses occurred, during his waning childhood into early adolescence, was a pivotal moment for him. Pornography became an increasing crutch for him to cope with feelings he did not otherwise know how to process, and he largely hid his usage

of pornography from his family. These early experiences clearly had profound impact on him and contributed to his conduct here.

**B. Age and Lack of a Criminal Record**

It is important to remember that Mr. Mansfield is now only 24 years old and was even younger when he became involved in this conduct. There is a growing recognition that age plays a significant role in criminal behavior. *See* United States Sentencing Commission Report *Youthful Offenders in the Federal System* (May 2015) at 5, *available at* https://www.ussc.gov/research/research-reports/youthful-offenders-federal-system. Importantly, the Sentencing Commission has found that people may not gain full reasoning skill and ability until they have reached the age of 25. The prefrontal cortex of the brain, which is utilized in impulse control, emotional reactions, executive function, and decision-making, is the last part of the brain to develop. *Id.* at 6. In evaluating criminal conduct, the Sentencing Commission expanded their own definition of "youthful offender" to those as old as 25 when they face federal sentencing. *Id.* at 5.

Mr. Mansfield was 22 years old when he became involved in this offense conduct and was 23 years old at the time of his arrest. This case represents his first and only contact with the criminal justice system. He had been exposed to the internet and pornography from a very early age. His inability to fully process his actions as well as the immaturity of his brain development contributed to his actions here. "The instant offense did not emerge in isolation. It occurred at a point when Mr. Mansfield's sense of self had already been shaken, when his primary source of identity had been lost, and when his longstanding needs to feel some control over his life had become increasingly urgent and distorted." Exhibit C at 8.

**C. Post-Arrest Conduct**

Although his brain may not have gained full reasoning at the time of his offense conduct, what is most telling and optimistic about Mr. Mansfield's future prospects are his actions upon his arrest. Almost immediately, he was remorseful for his actions and wanted to accept responsibility for what he had done. From the beginning, he expressed a desire to accept responsibility for his actions and take a plea. The delay in that occurring was due in part, and understandably, to the government seeking to complete its investigation to adequately address Mr. Mansfield's conduct and to find a plea that it felt would address those concerns.

His willingness to accept responsibility is demonstrated by his comments during an evaluation that occurred on May 14, 2025, less than a month after his arrest on April 29, 2025, as part of his pre-trial supervision. PSR ¶ 71. During this evaluation, he was candid about his struggles and acknowledged that he needed help from a mental health professional and needed to be medicated. *Id.* ¶ 72. He acknowledged even then that he needed to take responsibility for his behavior and face the consequences of his actions. *Id.* Importantly, he followed through on his statements. He followed the treatment recommendations and continued with mental health services at Empire State Forensics until he was remanded on this offense. *Id.* ¶ 73 He was compliant with attending mental health treatment and taking medications as prescribed. *Id.*

It is also important to acknowledge what he has lost through his actions, which has served as a powerful motivator to avoid future similar behavior. By all appearances, prior to his arrest, Mr. Mansfield's life was on an upward trajectory. He was halfway through the process of obtaining his master's degree, he was a graduate assistant, he had been a volunteer firefighter and EMT, and he was working as an EMT. He aspired to become a fire or police chief. Throughout the attached letters are examples of his kindness and dedication to others, particularly in service to others. Exhibit D; Letter from Justine O'Connor, dated March 9, 2026, attached hereto as Exhibit F; Letter from Paul Mutillo, dated February 23, 2026, attached hereto as Exhibit G; Letter from Alexis Langelotti, dated March 13, 2026, attached hereto as Exhibit H; Letter from Adam Schanuffer & Candice DeVos, dated February 27, 2026, attached hereto as Exhibit I; Letter from Ryan J. O'Gorman, attached hereto as Exhibit J; Letter from Stephanie Chartock, dated March 9, 2026, attached hereto as Exhibit K; Letter from Ronald & Kathleen Colandrea, dated March 10, 2026, attached hereto as Exhibit L; Letter from Timothy Becht, dated March 10, 2026, attached hereto as Exhibit M; Letter from Kaur Puneet, attached hereto as Exhibit N.

His entire world came crashing down following his arrest. He was expelled from school, and he had to re-access his life goals to find a career he could pursue with this criminal conviction. He was staying at his grandparents' house the day he was arrested and has to live with the fact that they were subjected to the intrusion of law enforcement entering their home in the early morning to execute a search warrant because of his actions. Exhibit E. During his time on pre-trial supervision, he also helped care for his grandparents and now he must face the real possibility that he may not still be here by the time he is released. Exhibits F, H, I.

To his credit, instead of focusing on himself as a victim, he has used the opportunity to re-access his life and address the issues that lead to him being here in the first place. "He understands that he made serious mistakes, and he does not minimize what happened." Exhibit G. However, he is determined to be better than his worse mistakes. Exhibit B. That is likely due to the strong and loving support of his family, girlfriend, his family friends, and co-workers. Exhibits A, D-N. As the attached letters indicate, despite what he has done, they continue to support him and plan to support him through his incarceration and upon his release. *Id.* Such support strongly indicates that he will be a low risk of recidivism upon his release.

Further, following his plea, Mr. Mansfield participated in a psychosexual evaluation. As noted in the attached report, Mr. Mansfield was scored as low risk on every instrument tested. Psychiatric, Psychosexual, and Risk Assessment by Richard B. Krueger, M.D., dated March 4, 2026, attached hereto as Exhibit O at 9-10. Dr. Krueger therefore concluded that he was a "very low" risk for recidivism for sexual and non-sexual offenses. *Id.* at 11; PSR ¶ 81. As Dr. Krueger concluded, "[h]is risk of recidivism for sexual and non-sexual crimes is very low and could be reduced further by appropriate treatment while incarcerated and when released to the community under the usual conditions of supervision of sexual offenders by Federal Probation." Exhibit O at 12. Mr. Mansfield's post-arrest actions indicate that he is very willing to participate in treatment both in custody and in the community in order to address the issues that brought him here. All of which suggests that a sentence of 60 months would be sufficient, but not greater than necessary.

In addition, he has also used his time in custody following his plea, to research programs he can participate in while in BOP custody as well as programs in order to complete his master's degree. Exhibit F. He has worked with social workers in our office to formulate a re-entry plan that focuses on receiving metal health services. Exhibit C. "He has expressed a clear desire to build a structured and stable future centered on accountability, connection, and consistent mental health treatment." *Id.* at 8. He has not let the experience of going into custody discourage him from building a better future for himself. As his Uncle Paul Muttillo notes, "Carsen is not someone who looks for an easy way out." Exhibit G. All of these actions suggest that Mr. Mansfield accepts responsibility for his actions and is not likely to reoffend.

For all of the above-stated reasons, Mr. Mansfield respectfully requests a sentence of 60 months incarceration followed by a period of supervision.

Respectfully submitted,

Elizabeth K. Quinn
Assistant Federal Defender
Counsel for Carsen Mansfield

cc: Patricia Reville, AUSA