**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*50 Main Street, Suite 1100*
*White Plains, New York 10606*

April 23, 2026

**BY ECF**
The Honorable Cathy Seibel
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

**Re: *United States v. Carsen Mansfield*, 26 Cr. 16 (CS)**

Dear Judge Seibel:

The Government respectfully submits this letter in advance of the sentencing of Carsen Mansfield (the "defendant" or "Mansfield"). Mansfield was convicted, following a guilty plea, of one count of receipt and distribution of child pornography and one count of extortionate interstate communications. As the Probation Office correctly concluded, the applicable sentencing range under the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") is 78 – 97 months' imprisonment. Presentence Investigation Report ("PSR") ¶ 105. The Government respectfully submits that a sentence of at least five years' imprisonment would be sufficient but not greater than necessary to serve the purposes of sentencing.[1]

## I. Background

On or about August 1, 2024, Mansfield, while in Newburgh, New York, communicated with an individual ("Individual-1") on X (then Twitter). Mansfield used the X username "expogirlsss." PSR ¶¶ 14-15. Mansfield and Individual-1 discussed exchanging sexually explicit content with each other. The defendant said, "[b]et and is there anything you'd like to trade in return? Or just take a look?" *Id.* ¶ 14. Individual-1 replied, "just take a look and if I like I'll maybee trade." *Id.* The defendant replied, "[o]kay, I'll send some tonight." *Id.*

[1] The Government requests that this submission be filed under seal. The Government will file a redacted version on ECF that redacts private details for Minor Victim-1 and Adult-1 in order to protect their privacy, including redacting Exhibit A (Minor Victim-1's impact letter) and Exhibit B (Adult-1's impact letter).

Mansfield then sent Individual-1 approximately 2 videos. PSR ¶ 15. One of the videos is of a topless woman on her knees with a penis in her mouth ("Adult-1"). *Id.* Mansfield described Adult-1 as his "sister."[2] *Id.*

Individual-1 then messaged Mansfield, "u expose ppl?" Mansfield replied, "[y]eah I do, but upon request." PSR ¶ 15. Mansfield then sent Individual-1 approximately 7 additional videos and 5 images, one of which was a sexually explicit video of a minor, Minor Victim-1, fully naked and masturbating ("Video-1"). *Id.* Mansfield then messaged Individual-1, "[u] got anything for me or nah? I was really hoping for at least a lil sum." *Id.* Mansfield had originally received the video of Minor Victim-1 on SnapChat from Minor Victim-1 [redacted] At the time of the video, Minor Victim-1 was [redacted] years old and Mansfield was approximately 18 years old. *Id.*

On or about August 4, 2024, Mansfield, while in Newburgh, New York, communicated with Minor Victim-2, who was located in Michigan, on Discord. PSR ¶ 11. Mansfield used the Discord username "nonme45.#0." *Id.* The defendant sent Minor Victim-2 a series of sexually explicit photographs (the "Minor Victim-2 Photos"). *Id.* ¶ 12. At the time that the Minor Victim-2 Photos were taken, Minor Victim-2 was 14 years old. *Id.*

After sending Minor Victim-2 the Minor Victim-2 Photos, Mansfield then demanded that Minor Victim-2 send him additional sexually explicit material. PSR ¶ 13. Mansfield threatened that if Minor Victim-2 did not send him additional content, then he would release nude photos of Minor Vicitm-2. *Id.* Mansfield stated, "[w]ell I have these pictures and if you don't send me more I'm going to send them to your friends and family." *Id.* He added, "[y]our my slut now [and] failure to make me happy will end up exposed to your friends and family." *Id.* Minor Victim-2 told Mansfield that she was not going to send him pictures and asked him to delete them. *Id.* Mansfield replied that he was "gonna pay you to make some stuff for me while I had these pics," and "[b]ut if you don't wanna do stuff I'll just post everything it's fine." *Id.* Minor Victim-2 asked Mansfield why he was threatening her. *Id.* Mansfield replied, "I love power, and tbh most of the time I do this to sisters of people to get videos of them sucking off their brothers but you are an exception." *Id.*

On November 7, 2025, Mansfield waived prosecution by indictment and consented to the filing of a felony information (the "Information"). On January 15, 2026, Mansfield pled guilty, pursuant to a plea agreement with the Government, to Counts One and Two of the Information, which charged receipt and distribution of child pornography with respect to Minor Victim-1 and, extortionate interstate communications with respect to Minor Victim-2. PSR ¶ 1.

---

[2] The FBI interviewed Adult-1, who is not Mansfield's sister, and who confirmed that she was an adult at the time the video was made. PSR ¶ 15. [redacted] Adult-1 stated that Mansfield shared the video without her consent. *Id.*

## II. The Guidelines Calculation

The Probation Office in the PSR and the parties in the plea agreement calculated the offense level for purposes of the Guidelines as follows:

U.S.S.G. §§ 3D1.1(a)(1) and 3D1.2 instruct that Count One and Count Two each constitute their own group as they represent separate victims, Minor Victim-1 and Minor Victim-2, respectively, and separate harms.

As to Count One, pursuant to § 2G2.2, the base offense is 22. Five levels are added pursuant to § 2G2.2(b)(3)(B) because the defendant distributed a sexually explicit video of Minor Victim-1 via social media in an attempt to receive additional sexually explicit material. Two levels are added pursuant to § 2G2.1(b)(6) because the offense involved the use of a computer or an interactive computer service to persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage in sexually explicit conduct, or to otherwise solicit participation by a minor in such conduct. Two levels are added pursuant to § 2G2.2(b)(7)(A) because the offense involved at least 10, but fewer than 150 images constituting child sexual abuse material.[3] Accordingly, the adjusted offense level is 31.

As to Count Two, pursuant to § 2B3.3, the base offense is 9.

Pursuant to § 3D1.4(a), Count One is assigned one unit. Pursuant to § 3D1.4(c), Count Two is assigned zero units because it is more than nine levels less serious than Count One. The combined adjusted offense level is determined by taking the offense level applicable to the group with the highest offense level. Therefore, the combined adjusted offense level is 31. Three levels are subtracted based on the defendant's timely acceptance of responsibility, pursuant to § 3E1.1, bringing the total offense level to 28.

According to the PSR, the defendant has zero criminal history points. Accordingly, the defendant is in criminal history category I.

A total offense level of 28 and criminal history category I yields an applicable Guidelines range of 78 to 97 months' imprisonment. The statute of offense for Count One also imposes a 60-month mandatory minimum.

## III. Applicable Law

The Sentencing Guidelines continue to provide important guidance to sentencing courts following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). Though they are advisory and not mandatory, the Sentencing Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Gall v. United States*, 552 U.S. 38, 46 (2007). It follows that district courts should treat the Sentencing Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 49; *see also Booker*, 543 U.S. at 264 (explaining that district courts must "consult" the Sentencing Guidelines and "take them into

[3] Pursuant to § 2G2.2 Application Note 6(B)(ii), each video "shall be considered to have 75 images."

account" when sentencing). Accordingly, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall*, 552 U.S. at 49.

After that calculation, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(l)-(7). *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant;
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

## IV. Discussion

The Government respectfully submits that a sentence of at least five years' imprisonment is appropriate in light of all of the sentencing factors set forth in 18 U.S.C. § 3553(a), and it would be sufficient but not greater than necessary to accomplish the goals of sentencing.[4]

Mansfield committed an extremely serious offense. Mansfield actively sought out individuals on X (formerly known as Twitter) who wanted to trade sexually explicit material of minors. Mansfield used the username "expogirlsss" and offered to expose girls "upon request" and in exchange for sexually explicit material. In exchange for blackmailing the girls, Mansfield requested child pornography.

Mansfield's conversation with Minor Victim-2 demonstrates the cruelty that he used in order to get child pornography from his blackmail targets. He told Minor Victim-2 that he was going to send pictures to her "friends and family" and said "[y]our my slut now." Mansfield told Minor Victim-2 that she would be "ruined" and sent her a heart emoji.

---

[4] Probation recommends a sentence of 60 months' imprisonment. PSR at 30.

Minor Victim-1 stated in her letter to the Court (attached as Exhibit A) that [redacted] Ex. A at 1. [redacted] *Id.* [redacted], Mansfield harassed her for years. *Id.* at 1-2. [redacted] *Id.* at 2. Minor Victim-1 was in "constant fear" that Mansfield would send explicit videos and photos of her to her family, friends, her partner, or even future employers. *Id.* Minor Victim-1 felt "isolated" and a "deep sense of shame" for sharing explicit photos when she was young. *Id.* Even after Minor Victim-1 [redacted], Mansfield's harassment continued. *Id.* at 3. "My daily life became a cycle of receiving disturbing messages from unknown numbers, blocking them, and then bracing myself for the next message to come through. It felt relentless and inescapable." *Id.* Minor Victim-1 stated that the "repeated exposure to degrading and threatening language began to affect how I saw myself. I started internalizing the words being directed at me." *Id.* When Minor Victim-1 learned that Mansfield had shared an explicit video of her [redacted] she "felt an overwhelming sense of violation and fear." *Id.* Minor Victim-1 stated that Mansfield's actions have "fundamentally changed my outlook on relationships and trust" and that she finds herself "questioning the intentions of those who try to get close to me." *Id.* She added, "I struggle to feel safe in situations that should feel normal. The sense of security I once had has been deeply shaken, and rebuilding that trust with not only myself but my partner has been an ongoing and difficult process." *Id.* Minor Victim-1 correctly noted that what Mansfield did "was not a series of isolated actions—it was a prolonged pattern of manipulation, intimidation, and harm that has had lasting emotional and psychological consequences." *Id.* at 3-4. She added, "[h]is actions took advantage of my youth, my trust, and my vulnerability, and he left me to deal with the aftermath during some of the most critical years of my self-development." *Id.* at 4. Unfortunately, the impact of Mansfield's actions was not short-lived. Minor Victim-1 stated, "[t]hese impacts are not temporary or something that simply fades with time—they are challenges I continue to work through each day." *Id.*

Adult-1 stated in her letter to the Court (attached as Exhibit B) that before this investigation, "I felt safe and normal." Ex. B at 1. "The words violated and betrayed are an understatement when describing how I felt upon learning of the defendant's actions against me. The defendant knew very well of my disfavor toward such acts and proceeded not only to take advantage of me at the lowest point in my life, but also to exploit me. My face, my body, my sense of dignity, peace of mind, privacy, and safety. All were stripped away in ways I can never fully get back." *Id.* Like Minor Victim-1, Adult-1 stated that she will have to live with Mansfield's actions "for the rest of my life" and the "impact of what was done to me does not simply fade with time or effort; it remains a lasting part of my reality." *Id.* at 2. Adult-1 pointed out that Mansfield "lived a double life" as a "first responder superhero," but was "concealing his true behavior from those around him." *Id.* Adult-1 is concerned that Mansfield will continue to be "a threat to young women." *Id.* Adult-1 asked for the "strongest consequence possible" so that "[n]o more women or young girls . . . have to endure what I and others have gone through." *Id.*

Both Minor Victim-1 and Adult-1 [redacted]. He violated their trust and vulnerability through his threats and sharing sexually explicit content of them without their awareness or consent. PSR at 31-32. Mansfield used sexually explicit content [redacted] in order to get more child pornography.

As Minor Victim-1 noted in her letter to the Court, these online conversations reflect that this was not a one-time lapse in judgment, but rather a concerted effort over the course of many days and weeks to induce individuals to provide him with child pornography for his own gratification. A serious sentence is necessary to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.

The Court must consider the need for the sentence imposed to promote both general and specific deterrence. A serious term of imprisonment would send the message to the public that exchanging child pornography online and threatening individuals to provide them with additional child pornography will be met with serious consequences. Although this is Mansfield's first offense, specific deterrence is still an important factor. In Dr. Richard Krueger's psychiatric, psychosexual, and risk assessment evaluation report, he found that Mansfield had a "very low" risk of recidivism, PSR ¶ 81, but noted that Mansfield "has had significant issues with compulsive sexual behavior involving the internet more or less continuously since he began using it as a juvenile." PSR ¶ 79(c). That compulsion suggests a real risk of recidivism. A serious sentence is necessary to deter him from reoffending. For much the same reasons, a serious sentence is necessary to protect the public from further crimes of Mansfield.

In addition, the Court must[5] order restitution to account for Minor Victim-1's losses, including medical expenses incurred in an amount not less than $3,000. 18 U.S.C. § 2259(b)(2); *see id.* § 2259(c)(2) ("full amount of the victim's losses" includes "medical services relating to physical, psychiatric, or psychological care"). Minor Victim-1 is not requesting additional restitution. The Government is not seeking a fine under the Amy, Vicky, and Andy Child Pornography Assistance Act of 2018 (the "AVAA") or the Justice for Victims of Trafficking Act of 2015 (the "JVTA") as the defendant does not have assets or the earning potential to pay an AVAA or JVTA fine either today or in the future.

Minor Victim-2 is not requesting restitution.

On the other side of the ledger, as explained in detail in the defense sentencing submission, Mansfield experienced difficult issues in his childhood including bullying and suicide attempts. Although the Court can and should consider this history in rendering a sentence, the Government submits that these issues neither excuse nor fully explain Mansfield's misconduct in this case. In fact, it is clear from the record that Mansfield himself bullied young women and girls by sharing sexually explicit content without their knowledge or consent, and threatening them.

---

[5] Pursuant to 18 U.S.C. § 2259(b)(4), restitution is mandatory.

## V. Conclusion

For the reasons set forth above, the Court should impose a sentence of at least five years' imprisonment and order the mandatory $3,000 restitution.

Respectfully submitted,

JAY CLAYTON
United States Attorney

By: _______________________
Patricia M. Reville
Assistant United States Attorney
Tel: (914) 993-1945

cc: Elizabeth Quinn, Esq.

# EXHIBIT A

## Minor Victim-1's impact letter

REDACTED

# EXHIBIT B

## Adult-1's impact letter

REDACTED